**Dated: July 25, 2006**
**The following is ORDERED:**



Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

| | |
|---|---|
| **PAUL N. TUCKER and** | Case No. 05-71752 |
| **SONDRA TUCKER**, | Chapter 7 |
| Debtors. | |
| **TULSA SPINE HOSPITAL, LLC** | |
| Plaintiff, | |
| vs. | Adv. No. 05-8122 |
| **PAUL N. TUCKER and** | |
| **SONDRA TUCKER** | |
| Defendants. | |

### O R D E R

On the 1st day of June, 2006, there came on for trial Plaintiff Tulsa Spine Hospital's

("Plaintiff") action to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(4)

and (6). Appearing on behalf of Plaintiff was Jay C. Baker. Defendants personally appeared and

were represented by Joe D. Tate. The Court heard the sworn testimony of witnesses and viewed exhibits introduced in this trial. The Court hereby enters its findings of fact and conclusions of law, in conformity with Rule 7052, Fed. R. Bankr. P.

## I. FINDINGS OF FACT

Defendants commenced their Chapter 7 proceeding on October 12, 2005. Defendant Paul Tucker ("Mr. Tucker") is employed as a heavy equipment operator by the Army Ammunition Depot in McAlester, Oklahoma. Defendant Sondra Tucker ("Mrs. Tucker") is disabled and receives social security payments. She completed school through the tenth grade. Prior to filing bankruptcy, Defendants were insured for a brief portion of time by Blue Cross Blue Shield ("BCBS"). Mrs. Tucker suffered from severe back pain and was scheduled for a cervical fusion to be performed at Plaintiff hospital in January of 2005. On January 5, 2005, Mrs. Tucker attended a pre-admission conference conducted by Ms. E. Hernandez, admission clerk for Plaintiff. Mrs. Tucker testified that she was in pain and taking pain medication the day of the conference. Her daughter drove her to and from the hospital that day. During the conference, Mrs. Tucker was advised that her insurance company, BCBS, considered the Plaintiff to be an out of network provider, therefore it would not pay benefits directly to Plaintiff but payment would be made directly to Mrs. Tucker. Mrs. Tucker signed an agreement ("Acknowledgment") requested by Plaintiff reciting this information about her insurance benefits which stated in pertinent part as follows:

> Blue Cross Blue Shield Insurance Company prohibits direct payment to the hospital; therefore payment will be mailed directly to the patient. I, as the patient of Tulsa spine Hospital will agree to forward any payments made to me by Blue Cross Blue Shield to the hospital along with a copy of the explanation of benefits for the professional or medical expense benefits allowable, and otherwise payable to me under my current insurance policy as payment toward the total charges for

>   the professional services rendered.  **THIS IS A DIRECT ASSIGNMENT OF
>   MY RIGHTS AND BENEFITS UNDER THIS POLICY.**  This payment will
>   not exceed my indebtedness to the above-mentioned assignee and facility as agreed
>   to take insurance payment as payment in full.  Failure to forward any insurance
>   payments that I will receive will revert my claim back to full face value, which will
>   be my responsibility . . . .

(Emphasis in original.)  Ms. Hernandez witnessed Mrs. Tucker's signature of this Acknowledgment. Ms. Hernandez did not notice that Mrs. Tucker was in any inordinate amount of pain, did not slur her speech, and, upon being informed of the meaning of the documents she was to sign, acknowledged that she understood those documents.  Ms. Hernandez testified that patients who are in great distress often require that a family member sign the paper work for them, but that this was not the case with Mrs. Tucker.  In "An Initial Pain Assessment" Mrs. Tucker rated her pain that day as a level six on a scale of one to ten, one indicating no pain, and ten indicating the severest level of pain.

The surgery was performed on January 7, 2005, and Mrs. Tucker was released from the hospital on January 9, 2005.  On February 16, 2005, Plaintiff received notice from BCBS that BCBS had paid insurance benefits for the surgery to Mrs. Tucker in the amount of $ 25,060.33 for the surgery charges of $ 36,088.44, and in the amount of $ 98.71 on another claim of $ 131.61.  Plaintiff then sent a letter to Mrs. Tucker notifying her that payments had been issued by BCBS.  Mrs. Tucker admitted that she received checks in these amounts from BCBS made payable to Mr. Tucker as the primary insured.  She endorsed the checks in his name, and deposited them into their joint checking account.  She testified that she had Mr. Tucker's permission to sign his name when necessary, and he verified this fact.  Mr. Tucker stated that Mrs. Tucker was in complete control of the household finances and that all business conducted on their behalf by Mrs. Tucker was done with his permission, consent, and authority.  He was aware

3

that they had received a check from BCBS, but he was not aware of the amount or that she had endorsed it for him and spent the funds.

Mrs. Tucker further testified that she thought the checks were hers to keep. She stated that she called Plaintiff to make arrangements for payment. She learned that she was liable for the entire amount owed and offered to make monthly payments in the amount of $100 each. She did send at least one payment to Plaintiff in the amount of $ 1,220.05, and her testimony was that she made payments to the Hospital totaling approximately $ 4,000, although she did not provide evidence of those payments to the Court. Mrs. Tucker admitted that the proceeds of the checks from BCBS were spent to pay bills because the couple was in financial distress, that she used some of the proceeds to make contributions to their church, and that she could not precisely account for how all of the insurance proceeds were spent.

## II.  CONCLUSIONS OF LAW

Plaintiff seeks a determination from this Court that its claim against the Defendants is not dischargeable pursuant to 11 U.S.C. §§ 523(a) (4) and (6). The issue of nondischargeability is a matter of federal law governed by the terms of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284 (1991). The creditor has the burden to establish by a preponderance of the evidence that the debt is nondischargeable. *Id* at 291. Exceptions to discharge are to be narrowly construed to effectuate the fresh start policy of the Bankruptcy Code. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

### A.  Denial of discharge under § 523(a)(4).

#### 1.  Fraud or defalcation while acting in a fiduciary capacity.

Plaintiff seeks to deny discharge of its claim pursuant to 11 U.S.C. § 523(a)(4) on the

4

grounds that Mrs. Tucker received the BCBS insurance proceeds in a fiduciary capacity for Plaintiff because of the Acknowledgment she signed. That statute states in relevant part:

>    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
>
>  >       (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

Plaintiff must establish two elements to prevent discharge under this statue: (1) a fiduciary relationship between her or her husband and Plaintiff, and (2) fraud or defalcation committed by the debtors in the course of that fiduciary relationship. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996). This relationship must have existed prior to the creation of the debt. *In re Klippel*, 183 B.R. 252 (Bankr. D. Kan. 1995). The existence of a fiduciary relationship is a question of federal law, but state law is also important when determining whether a trust relationship exists. *Young* at 1371.

This circuit narrowly construes the phrase "fiduciary capacity." *Id*. *See also*, *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 785 (10th Cir. BAP 1997). In considering whether a fiduciary relationship exists, the Tenth Circuit has issued the following instructions:

>    Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor. Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4). Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power is sufficient to establish a fiduciary relationship for purposes of dischargeability.

91 F.3d at 1371-1372 (citations and internal quotation marks omitted). "The elements of an express trust are the intent to create a trust, a clearly defined trust res, and specific trust duties."

5

*In re Stefanoff*, 97 B.R. 607 (Bankr. N.D. Okla. 1989).  Express or technical trusts may be created by statute.  *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621-622, (10th Cir. 1976). However, neither an equitable, implied or constructive trust, nor an agency relationship is sufficient to create the requisite fiduciary relationship. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333; *In re Weber*, 99 B.R. 1001, 1008-1009 (Bankr. D. Utah 1989).   Thus, this Court must determine whether the assignment of benefits by Mrs. Tucker to the Plaintiff, or some other mechanism such as a statutory scheme exists that is sufficient to establish a fiduciary relationship between these parties.

There is no express written agreement between these parties establishing a trust or fiduciary relationship.  The assignment of benefits clause is insufficient to establish an express trust. There are no terms commonly used to create a trust nor clearly defined duties and powers of management over trust property granted to a trustee.  Instead, there is a simple assignment of the Tucker's benefits from their insurance company.  The substance of the assignment was a promise to pay the costs of Mrs. Tucker's surgery to the Plaintiff.  The assignment does not state that she or her husband would hold the insurance proceeds in trust for the Plaintiff as the property of that creditor.  The proceeds were actually the property of Mr. and Mrs. Tucker, subject to the Plaintiff's claim against those proceeds which arose out of Mrs. Tucker's promise to pay her debt to the Plaintiff.  The resulting obligation of the Debtors to their creditor, Plaintiff Hospital, did not create a trust or fiduciary relationship because of the language of that assignment.  *See, Davis*, at 334.  This is a simple debtor-creditor relationship that is contractual in nature, not a fiduciary relationship.  *See, In re Luna*, 406 F.3d 1192, 2004 (10th Cir. 2005) (citing *Restatement (Third) of Trusts*, §§ 5(i) and (k) (2001)); *see also, Joseph v. Stone (In re Stone)*, 91 B.R. 589 (D. Utah

1988) (fiduciary relationship does not encompass ordinary commercial relationships such as principal/agent or creditor/debtor).

Another bankruptcy court considered whether a similar assignment of benefits clause by a patient to a hospital was sufficient to create a fiduciary relationship. In *University Orthopaedic Assoc. of Rochester v. Catalano (In re Catalano)*, 98 B.R. 168 (Bankr. W.D. N.Y. 1989), upon admission of their minor son to the hospital, the debtors signed an "Assignment of Benefits" to the hospital of all medical benefits they received from their insurance company for the cost of the care and treatment of their son. The plaintiff was a medical group which rendered medical services to the boy while he was a patient at the hospital. It argued that the assignment of benefits clause created a constructive trust that gave rise to the debtors' fiduciary duty to the plaintiff. The court held that an express trust was required by the Bankruptcy Code, and the assignment of benefits was insufficient to create an express trust. In the absence of an express trust, the debtors owed no fiduciary duty to the plaintiff and their debt to plaintiffs was entitled to be discharged. *Id.* at 170. Although the plaintiff was not a direct party to the assignment of benefits and the court noted that fact in its decision, this Court believes that the analysis of the case is sound and of persuasive value here. A fiduciary relationship is to be narrowly construed so that debts in ordinary commercial relationships are not shielded from discharge in bankruptcy. Only an express trust, not a constructive trust, gives rise to fiduciary relationship in bankruptcy, and the assignment of benefits clause did not create an express trust. *Id.*

This Court's decision is bolstered by other language in the Acknowledgment. It provides an alternative to ensure payment to the Hospital in case the patient does not forward insurance payments as anticipated. In that event, the patient promises to pay the full amount of the debt to

7

the Hospital, without any pre-negotiated reduction.  This statement indicates that the patient has two choices: he or she can either turn over the insurance proceeds directly to the Hospital in exchange for a reduction in the medical charges, or not turn over the proceeds in which case the patient will owe a greater debt to the hospital and will be responsible to pay this larger debt themselves.  This is not reflective of a trust relationship wherein the recipient of property would hold it in trust for another, promising to manage that property so as to preserve it for eventual distribution to a beneficiary.  This Acknowledgment contemplates the possibility that the purported trust res will be distributed to someone other than the beneficiary and does not expressly prohibit that event.  The occurrence of that situation would certainly not be in keeping with the purpose and function of a trust.  This provision is further evidence that the Acknowledgment did not give rise to a trust or fiduciary relationship.  Mrs. Tucker's testimony was that she acted under this alternative by trying to work out a payment plan with the Plaintiff, knowing that her failure to turn over the insurance proceeds directly to the Hospital made her responsible for the full amount of her medical charges.  The Plaintiff's evidence confirms Mrs. Tucker's testimony that she attempted to enter into a payment plan.

Since there is no express agreement creating a fiduciary relationship, the Plaintiff must meet  its burden of establishing such a relationship by directing the Court to an Oklahoma statute that does so.  Plaintiff, however, has not cited any such statute, nor has this Court found one in its research of Oklahoma law.  Accordingly, this Court finds that the Acknowledgment did not create a fiduciary relationship, therefore the Plaintiff cannot meet the threshold requirement of § 523(a)(4).  Without a fiduciary relationship, this Court need not address the issues of whether fraud or defalcation was committed by the Defendants.

2. Embezzlement or larceny.

The debt may still fall within the exception to discharge of § 523(a)(4) in the absence of a fiduciary relationship if Defendants are found to have embezzled the funds or committed larceny. The Plaintiff focused its efforts on the theory that the Defendants assigned these insurance proceeds to the Plaintiff through Mrs. Tucker's signature on the Acknowledgment and therefore, upon receipt of the proceeds, held them in trust for the Plaintiff. It did not specifically accuse the Defendants of embezzlement or larceny, which do not require a fiduciary relationship for denial of discharge. However, Plaintiff did accuse them of fraud and theft, therefore this Court will consider whether the Plaintiff met its burden to establish embezzlement or larceny.

"Embezzlement under federal law is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Clemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988) (citations omitted). Embezzlement, under § 523(a)(4), requires fraud in fact rather than implied or constructive fraud. *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986), *overruled on other grounds* by *Grogan v. Garner.* 489 U.S. 279. Specifically, the elements required to prove embezzlement are: 1) entrustment 2) of property 3) of another 4) that is misappropriated. *In re Tilley*, 286 B.R. 782, 789 (Bankr. D. Colo. 2002). Larceny is the taking of property without the owner's consent, but without force or violence. *United States v. Smith*, 156 F.3d 1046 (10th Cir. 1998). The major difference between embezzlement and larceny is that embezzled property is originally obtained in a lawful manner, while in larceny the property is unlawfully obtained. *In re Tilley* at 789.

Plaintiff cannot meet its burden of establishing either of these exceptions because each requires that the property appropriated or taken must have belonged to the creditor, not to the

9

debtor. The insurance proceeds were made payable to Mr. Tucker, not jointly payable to him and Plaintiff, and were his property, not the property of the Plaintiff. He had an ownership interest in these proceeds. This fact indicates that the Debtors had an interest in the proceeds such that the proceeds, therefore there was no entrustment or taking of the property of another. Additionally, there is no evidence of fraud. The Acknowledgment does acknowledge the possibility of an alternative method of payment. Mrs. Tucker testified that she did not have a thorough understanding of the assignment language but understood that if she turned over the payments from BCBS she would owe less than if she paid the debt in installments. She also testified that she intended to pay the debt to the Plaintiff in installments and Plaintiff's records note this offer. There is no direct evidence of fraud in fact. Based upon the authorities and facts cited herein, the Court finds that Plaintiff has not met its burden of proof and the debt is not excepted from discharge pursuant to 11 U.S. § 523(a)(4).

### B. Denial of discharge under § 523(a)(6).

Plaintiff also argues that the debt should be excepted from discharge under § 523(a)(6). That statute provides that a discharge will not include a debt

> (6) for willful and malicious injury by the debtor to another entity or to the
> property of another entity; . . . .

For a debt to be nondischargeable under this section, a creditor must prove "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaahua v. Geiger*, 523 U.S. 57, 61 (1998). Nondischargeability under this section requires an intent to do harm, not just an intentional act. *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. BAP 2004) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 462-63 (6th Cir.

10

1999)).

This statute requires proof of both a willful act and a malicious injury. A "willful act" is one in which a debtor "must 'desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it.'" *Moore* at 1129 (quoting *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley),* 235 B.R. 651, 657 (10th Cir. BAP 1999)). Black's Law Dictionary defines "willful" as "voluntary" or "intentional." *See, Geiger* at 61, fn 3. "Willfulness" can be proven by direct evidence of specific intent to harm the creditor or his property, or indirect evidence that the debtor knew of the creditor's rights and that his conduct will cause some particularized injury or that injury was substantially certain to occur. *Longley* at 657.

As for the malice element of § 523(a)(6), this court follows the view that malice is present upon a showing that the injury was inflicted without just cause or excuse. *Bombardier Capital, Inc. v. Tinkler (In re Tinkler),* 311 B.R. 869, 880 (Bankr. D.Colo. 2004), citing *Tinker v. Colwell*, 193 U.S. 473 (1904). A malicious injury is one in which the debtor either intended the resulting injury or intentionally took some action that was substantially certain to cause the injury. *Id.*

Plaintiff failed to meet its burden of proving willfulness and malice. Mrs. Tucker's testimony was that she intended to pay off the debt to the Plaintiff in installments, and did not intend to spend the insurance proceeds for personal things, then file bankruptcy so that she could discharge her debt to the Plaintiff. This Court believes the testimony of Mrs. Tucker that she did not intend to defraud the Plaintiff or intentionally injure the Plaintiff by deliberately failing to pay her hospital bills. She testified that she paid approximately $4,000 to the Plaintiff which supports her position that she intended to pay the debt and did not intend to injure the Plaintiff. There was

11

a delay of nearly eight months from the time she received the insurance proceeds until the day she and Mr. Tucker filed bankruptcy. In addition, the testimony indicated that Mrs. Tucker disposed of the proceeds with some justification since she was not entirely certain of the legal effect of the assignment of benefits clause, but thought she would be allowed to pay off the debt by installment, a fact born out by the language of the Acknowledgment. The facts fit within the realm of a deliberate or intentional act that leads to injury, rather than a deliberate and intentional injury, and, as such, do not give rise to an exception to discharge. *Geiger* at 61. This debt is in the nature of a breach of contract claim rather than an intentional tort. Accordingly, it does not meet the requirements for exception from discharge under § 523(a)(6).

### III. CONCLUSION

Based upon the findings and legal conclusions set forth herein, this Court finds that the Plaintiff Tulsa Spine Hospital, L.L.C. has failed to meet its burden of proof by a preponderance of the evidence that the debt of Defendants Paul and Sondra Tucker should be excepted from discharge pursuant to 11 U.S.C § 523(a)(4) and (6). The Defendants' debt to the Plaintiff is therefore dischargeable.

IT IS THEREFORE ORDERED that Plaintiff Tulsa Spine Hospital, L.L.C.'s requested claim for relief pursuant to 11 U.S.C § 523(a)(4) and (6) is **denied**, and the Defendants' debt to Plaintiff is **dischargeable**.

# # #

12